```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                        AT PARKERSBURG
```

**SCHOTT CORPORATION and SCHOTT**
**SCIENTIFIC GLASS, INC.,**

    **Plaintiffs,**

**v.**                                              **CIVIL ACTION NO. 6:04-0191**

**THE AMERICAN INSURANCE COMPANY,**

    **Defendant.**

### MEMORANDUM OPINION AND ORDER

Pending before this court is plaintiffs' motion to enforce settlement agreement. (Doc. No. 46.)  Plaintiffs seek to have the settlement agreement enforced even though the parties never executed a written agreement, because all material terms were agreed to.  A hearing was held on the matter on October 10, 2006.  For the reasons outlined below, plaintiffs' motion to enforce settlement agreement is **GRANTED.**

### I.  Factual and Procedural Background

Plaintiffs originally filed their complaint in this case on March 4, 2004.  (Doc. No. 1.)  In their amended complaint filed on August 25, 2004, plaintiffs Schott Corporation and Schott Scientific Glass, Inc. ("Schott") sought insurance coverage from defendant, American Insurance Company ("American"), under Workers Compensation and Employers Liability Insurance Policy No. 779KWC80653072, one of three insurance policies Schott purchased from American.  (Doc. No. 22 at 3, 11-15; Doc. No. 49 at 14.)

Schott's claim for coverage arose from a class action suit brought by a group of employees against Schott that was settled in June, 2002 ("the underlying action"). (Doc. No. 22 at 6.) Schott asserted that this action fell within the scope of coverage of Policy No. 779KWC80653072. (Doc. No. 22 at 9.) The amount of the settlement was in excess of $1 million. (Doc. No. 22 at 6.)

In addition, Schott also settled a related action referred to by both parties as the "Tanner claim." (Doc. No. 49 at 14; Doc. No. 46-6 at 5.) Some of the plaintiffs in the underlying action were also plaintiffs in the Tanner claim. (Doc. No. 22 at 6.) As part of the settlement, these plaintiffs agreed to use the damages they received for the Tanner claim as a credit to offset any damages received in the underlying action. (Doc. No. 22 at 7.) As a result, Schott agreed to a settlement in the underlying action that was $553,748.36 less than it would have been. (Id.) In its amended complaint, Schott sought not only the settlement value of the underlying action, but also the amount offset from that value as a result of the settlement of the Tanner claim. (Doc. No. 22 at 12.)

In May, 2006, Schott offered to settle its claims against American for $1 million. (Doc. No. 46-3 at 11.) After unsuccessfully trying to negotiate the settlement amount down to $800,000, American accepted the offer by email in exchange for a "full and complete Release of Any and All Claims." (Doc. No. 46-3 at 11, 13.) By the end of June, 2006, both parties had drafted

their own Settlement Agreement and Release. (See Doc. No. 46-5; Doc. No. 49 at 14.) The Settlement Agreement and Release drafted by Schott was limited to claims pending against American under Policy No. 779KWC80653072. (Doc. No. 46-5.) Although not explicitly referred to in Schott's Settlement Agreement, Schott's counsel stated at the hearing that the Tanner claim was considered part of the settlement. The Settlement Agreement and Release drafted by American included all three insurance policies and the Tanner claim in the release language. (See Doc. No. 49 at 14.) On September 12, 2006, Schott filed a motion to enforce settlement agreement. (Doc. No. 46.) On October 10, 2006, this court held a hearing on the matter.

This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship among the parties[1] and the amount in controversy exceeds $75,000, exclusive of interest and costs.

### II. Enforcement of the Settlement Agreement

Settlement agreements are contracts and must be construed "as any other contract." Miller v. Liberty Mut. Ins. Co., 393 F.Supp.2d 399, 406 (S.D.W.Va. 2005) (quoting Sanson v. Brandywine

---

[1] Schott Corporation is organized under Maryland law and has its principal place of business in New York. Schott Scientific Glass, Inc., is organized under Maryland law and has its principal place of business in Parkersburg, West Virginia. The American Insurance Company is organized under Nebraska law and is licensed to transact business in West Virginia. (Doc. No. 22. at 1-2.)

Homes, Inc., 599 S.E.2d 730, 734 (W. Va. 2004)). Under West Virginia law, a settlement agreement can only be enforced if there has been a meeting of the minds. Triad Energy Corp. of West Virginia, Inc. v. Renner, 600 S.E.2d 285, 288 (W. Va. 2004). District courts have inherent authority, deriving from their equity power, to enforce settlement agreements. Hensley v. Alcon Laboratories, Inc., 277 F.3d 535, 540 (4th Cir. 2002). In order to enforce a settlement agreement, a district court (1) must find that the parties reached a complete settlement agreement and (2) must discern the terms of that agreement. Id. at 540-41; Moore v. Beaufort County, 936 F.2d 159, 162 (4th Cir. 1991).

A district court must deny enforcement if it concludes that there was no settlement agreement or if agreement was not reached on all material terms. Hensley, 277 F.3d at 541. Having second thoughts about the results of a valid settlement agreement does not justify setting aside an otherwise valid agreement, and the fact that the agreement is not in writing does not render it unenforceable. Id. at 540 (citations omitted).

Applying the two-prong test outlined in Moore and Hensley, this court must grant Schott's motion to enforce settlement agreement. See Hensley, 277 F.3d at 540-41; Moore, 936 F.2d at 162. First, there is no dispute that the parties reached an agreement to settle on May 22, 2006, when American's attorney emailed Schott's attorney to tell him that American would accept Schott's offer to settle its claims against American for $1

million (Doc. No. 46-3 at 13).  Second, the court discerns that the material terms of this agreement are that American promised to pay Schott $1 million in full and final settlement of the suits and claims pending against American as a result of Schott's claims for coverage under Workers Compensation and Employers Liability Insurance Policy No. 779KWC80653072, including the underlying action and the Tanner claim.

    The court rejects American's argument that the parties never had a meeting of the minds because they never agreed whether all three insurance policies issued to Schott by American would be covered by the agreement or whether only those claims arising from Policy No. 779KWC80653072 would be covered.  (See Doc. No. 49.) Having considered both the exhibits attached to the parties' pleadings and the parties' statements at the hearing, this court determines that prior to the settlement agreement, the parties never discussed including any policy other than Policy No. 779KWC80653072 in the settlement.  Therefore, it would have been unreasonable for American to assume that all three policies were included in the release.

    The amount of the settlement supports the conclusion that both parties intended to release only those claims arising from Policy No. 779KWC80653072.  Settling the underlying action cost Schott more than $1 million; in addition, the offset from the settlement of the Tanner claim was an additional $553,748.36. (Doc. No. 22 at 6-7.)  As Schott's attorney stated in the hearing,

Schott would likely not have released all claims arising under all three insurance policies for an amount that is less than the amount used to settle the claims arising from one insurance policy. It also seems unlikely that American could have believed that Schott would settle all claims arising from all three insurance policies, either for the $1 million they eventually agreed to, or for the $800,000 that American proposed to pay.

In addition, Schott argued both in its reply and at the hearing that it is customary in insurance coverage litigation that the release only covers the underlying claims or actions specified in the insurance coverage complaint. (Doc. No. 50 at 2-3.) American did not contradict this assertion at the hearing. This further supports Schott's claim that both parties understood from the time they agreed to settle that the scope of the release would be limited to the claims listed in the amended complaint. Therefore, this court holds that there is an enforceable settlement agreement between Schott and American which consists of two terms: (1) a payment by American to Schott of $1 million; (2) a release of all suits and claims pending against American as a result of Schott's claims for coverage under Workers Compensation and Employers Liability Insurance Policy No. 779KWC80653072, including the underlying action and the Tanner claim.

**III.   Prejudgment Interest**

In its motion to enforce settlement agreement, Schott requests that the court award it prejudgment interest pursuant to West Virginia Code § 56-6-31(a). State law governs the award of prejudgment interest in a diversity case. See Hitachi Credit America Corp. v. Signet Bank, 166 F.3d 614, 633 (4th Cir. 1999). West Virginia Code § 56-6-31(a) provides, in relevant part, that:

> [I]f the judgment or decree, or any part thereof, is for special damages, as defined below, or for liquidated damages, the amount of such special or liquidated damages shall bear interest from the date the right to bring the same shall have accrued, as determined by the court. Special damages includes lost wages and income, medical expenses, damages to tangible personal property, and similar out-of-pocket expenditures, as determined by the court. If an obligation is based upon a written agreement, the obligation shall bear a prejudgment interest at the rate set forth in the written agreement until the date the judgment or decree is entered and, thereafter, the judgment interest rate shall be the same rate as provided in this section.

W. Va. Code § 56-6-31(a)(2006). The West Virginia Supreme Court of Appeals has specifically held that prejudgment interest under W.Va.Code, 56-6-31 is "to be recovered only on special or liquidated damages." Grove v. Myers, 382 S.E.2d 536, 542 (W. Va. 1989). In this case, it would be inappropriate to award prejudgment interest because this is not a judgment for special or liquidated damages.

**IV. Attorney's Fees**

Schott argues that it should be awarded attorney's fees because American acted in bad faith. (Doc. No. 47 at 11.) District courts have the authority under their inherent powers to shift attorneys fees, but "only in the extraordinary circumstances where bad faith or abuse can form a basis for doing so." <u>Hensley</u>, 277 F.3d at 543. Because the court does not find that this case involves such extraordinary circumstances, the court exercises its discretion to deny Schott's attorney's fees.

### V. Conclusion

For the reasons outlined above, plaintiffs' motion to enforce settlement agreement is **GRANTED.** The parties are directed to draft and execute a Settlement Agreement and Release that conforms with the terms of their settlement agreement within 30 days of entry of this Order.

The Clerk is directed to send copies of this Memorandum Opinion and Order to all counsel of record.

It is **SO ORDERED** this 17th day of October, 2006.

ENTER:

David A. Faber
Chief Judge